UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| CRAIG JEREMY RICHARDSON,<br><br>                    Plaintiff(s),<br><br>    v.<br><br>LAS VEGAS METROPOLITAN POLICE DEPARTMENT, et al.,<br><br>                    Defendant(s). | Case No. 2:13-CV-1481 JCM (VCF)<br><br>ORDER |

Presently before the court is defendant officer Jeremy Jacobitz's motion for summary judgment. (Doc. # 46). *Pro se* plaintiff Craig Jeremy Richardson filed a response (doc. # 48), and officer Jacobitz filed a reply (doc. # 51).

**I.    Background**

This case stems from plaintiff's presence at a crime scene where individuals not involved in the instant action were arrested. (Doc. # 46 at 2). Plaintiff alleges that on September 4, 2012, officers Jacobitz and Anthony Kvam falsely arrested him while plaintiff was filming, "what [he] perceived to be police brutality." (Doc. # 1-1 at 4).

Plaintiff was outside of a smoke shop talking with an acquaintance when a concerned citizen flagged down officer Kvam to report numerous individuals who were causing some kind of a disturbance in the smoke shop. (*Id.* at 3). Kvam reported the incident to dispatch and began investigating. (*Id.*). Jacobitz responded to Kvam's dispatch call and came to the smoke shop to assist. (*Id.*). The smoke shop is known to officers as a high crime area for gang-related activity including narcotics sales.

**James C. Mahan**
**U.S. District Judge**

1    The suspects fled as Kvam attempted to take them into custody. (*Id.* at 4). When Jacobitz arrived, he witnessed the suspects attempting to flee and helped Kvam to detain them. (*Id.*). Jacobitz recognized one of the individuals—Billy Ray Kelly—from a prior narcotics operation. (*Id.*). The officers found drugs on Kelly's person.

As officers Jacobitz and Kvam detained the suspects, plaintiff began recording the arrests. (*Id.*). One of the suspects looked at plaintiff and told him, "Keep on recording, sir." (*Id.*). It is unclear whether officer Jacobitz was aware that plaintiff was recording the arrests.

Defendants assert that the contact between plaintiff and the suspect who told him to keep recording, and Jacobitz's experience that Kelly used "lookouts" to facilitate his criminal activities caused Jacobitz to think that plaintiff was involved in the criminal activity. Jacobitz approached plaintiff and told him to put his hands behind his back, escorted him to the curb, and sat him down. (*Id.* at 5).

Plaintiff protested his detention and began yelling and refused let the officers explain the reason for his detention. (*Id.*). Plaintiff then lay down on the ground and refused to move. It took numerous officers to move plaintiff safely into a patrol car.

While plaintiff yelled, another suspect attempted to flee the scene on Kelly's bike. Jacobitz asserts that he thought plaintiff was aiming to distract the officers with his yelling to allow this suspect to escape. (*Id.*). The officers stopped the suspect attempting to flee. (*Id.*).

While waiting in the patrol car, plaintiff became increasingly violent and agitated. Plaintiff continued to yell and kick inside the back of the patrol car. Officers restrained plaintiff with leg hobbles to minimize plaintiff's attempts to damage the patrol car. Plaintiff then used his head to break the rear passenger window of the patrol car.

The city of Las Vegas brought a criminal complaint against plaintiff for the misdemeanor offense of obstructing a public officer. (Doc. # 46-2 at 15). The municipal court held a trial on April 23, 2013, found plaintiff guilty of the charged misdemeanor, and sentenced him to ninety days in prison. (Doc. # 46-2 at 50).

Plaintiff filed a motion to proceed in forma pauperis with the instant complaint on August 19, 2013. (Doc. # 1). On September 5, 2013, the magistrate judge screened plaintiff's complaint

**James C. Mahan**
**U.S. District Judge**

- 2 -

and prepared a report and recommendation. (Doc. # 3). On December 11, 2013, the court adopted the magistrate judge's report and recommendation. (Doc. # 7). The court filed plaintiff's complaint, which the court construed as accusing officers Jacobitz and Kvam of violating his First Amendment right to be free from retaliatory arrest for speech and Fourth Amendment right against unlawful seizure. (Doc. # 8).

Defendant Jacobitz now moves for summary judgment as to all of plaintiff's claims. (Doc. # 46).

**II.     Legal standard**

The Federal Rules of Civil Procedure provide for summary judgment when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that "there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

In determining summary judgment, a court applies a burden-shifting analysis. "When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial. In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citations omitted).

In contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex*, 477 U.S. at 323–24. If the moving party fails to meet its initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970).

1  If the moving party satisfies its initial burden, the burden then shifts to the opposing party
2 to establish that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith*
3 *Radio Corp.*, 475 U.S. 574, 586 (1986). To establish the existence of a factual dispute, the opposing
4 party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the
5 claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions
6 of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th
7 Cir. 1987).
8  In other words, the nonmoving party cannot avoid summary judgment by relying solely on
9 conclusory allegations that are unsupported by factual data. *See Taylor v. List*, 880 F.2d 1040,
10 1045 (9th Cir. 1989). Instead, the opposition must go beyond the assertions and allegations of the
11 pleadings and set forth specific facts by producing competent evidence that shows a genuine issue
12 for trial. *See Celotex*, 477 U.S. at 324.
13  At summary judgment, a court's function is not to weigh the evidence and determine the
14 truth, but to determine whether there is a genuine issue for trial. *See Anderson v. Liberty Lobby,*
15 *Inc.*, 477 U.S. 242, 249 (1986). The evidence of the nonmovant is "to be believed, and all justifiable
16 inferences are to be drawn in his favor." *Id.* at 255. But if the evidence of the nonmoving party is
17 merely colorable or is not significantly probative, summary judgment may be granted. *See id.* at
18 249–50.

19 **III.  Discussion**

20  To state a claim under 42 U.S.C. § 1983, a plaintiff must allege two elements: (1) a
21 deprivation of rights secured by the "Constitution and law" of the United States (2) committed by
22 a defendant acting under the color of state law. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 150
23 (1970).  In analyzing a claim under section 1983, the first step is to identify the specific
24 constitutional rights allegedly infringed. *Id.*
25  To succeed on a First or Fourth Amendment claim, plaintiff must demonstrate that he was
26 arrested without probable cause. *See, e.g.*, *Armes v. City of Phila.*, 706 F. Supp. 1156, 1163 (E.D.
27 Pa 1989) (*citing Losch v. Borough of Parksburg*, 736 F.2d 903 (3d Cir. 1984) (discussing First
28

**James C. Mahan**
**U.S. District Judge**

- 4 -

1 Amendment violations)); *Graham v. Connor*, 490 U.S. 386, 388 (1989) (discussing the Fourth
2 Amendment).

3 Jacobitz argues that plaintiff's Fourth Amendment claim is barred by the Supreme Court's
4 ruling in *Heck v. Humphrey*, 512 U.S. 477 (1994).  Because *Heck* may bar First Amendment claims
5 as well, the court assesses whether *Heck* bars both of plaintiff's claims.

6 *Heck* holds that a § 1983 claim is not cognizable if a judgment in favor of the plaintiff
7 would imply the invalidity of his conviction or sentence, and his conviction or sentence has not
8 been invalidated by appeal, executive order, a state tribunal, or a federal court's issuance of a writ
9 of habeas corpus. *Id.* at 486–87.  The municipal court convicted plaintiff of obstructing a police
10 officer for his actions on September 4, 2012.  Plaintiff now asserts that defendants violated his
11 First Amendment rights when they detained him, because defendants prevented plaintiff from
12 filming the incident.  Further, plaintiff asserts that defendants violated his Fourth Amendment
13 rights because they lacked probable cause to detain him at the time of the incident.

14 The court finds that prevailing on his First or Fourth Amendment claims would effectively
15 invalidate plaintiff's criminal conviction arising from the same events.  *See, e.g.*, *Harvey v.*
16 *Waldron*, 210 F.3d 1008, 1015 (9th Cir. 2000) (overruled in part on other grounds) (§ 1983 action
17 alleging illegal search and seizure upon which criminal charges are based does not accrue until the
18 criminal charges have been dismissed or the conviction has been overturned); *see also Smith v.*
19 *Ball*, 278 F. App'x 739, 741 (9th Cir. 2008) (noting in dicta that a plaintiff's First Amendment
20 claim that officer defendants attempted to chill her political speech by arresting her was likely
21 barred by *Heck*).

22 Further, with respect to plaintiff's First Amendment claims, the court finds that plaintiff
23 fails to raise a genuine issue of material fact regarding defendants' detention of plaintiff.  Plaintiff
24 presents no evidence to support his theory that defendants detained him for filming the incident.
25 Defendants present evidence to demonstrate that they detained plaintiff based on reasonable
26 suspicion that plaintiff was a lookout for Kelly and involved in the criminal activity.

27 The court grants summary judgment for defendants with respect to both of plaintiff's
28 claims.

**James C. Mahan**
**U.S. District Judge**

- 5 -

**IV.     Conclusion**

Accordingly,

IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that defendant officer Jeremy Jacobitz's motion for summary judgment (doc. # 46) be, and the same hereby is, GRANTED.  The clerk is ordered to close the case and enter judgment accordingly.

DATED July 21, 2015.

_____
UNITED STATES DISTRICT JUDGE

**James C. Mahan**
**U.S. District Judge**